UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AYMEE LORAY JOANN KRING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:23-CV-941-CCB ) |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Aymee Loray Joann Kring's ("Kring") appeal of the Social Security Administration's Decision dated May 30, 2023 (the "Decision") which found that Kring was not disabled and not entitled to disability benefits. The parties have briefed the appeal.[1] After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be remanded.

## ANALYSIS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant

---

[1] On June 11, 2024, Kring filed a motion for a two day extension of time to file a reply [ECF 22], which was due that date. On June 13, 2024, the reply was filed. The motion for extension is granted.

evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

B.  **Procedural Background**

Kring filed an application for benefits on July 16, 2020, alleging disability beginning on January 11, 2017. The claim was denied initially and on reconsideration. On April 26, 2023, the parties participated in a hearing before an ALJ. The ALJ issued an unfavorable decision on May 30, 2023. (R. 17-29).  This appeal followed.

### C. The ALJ's Decision

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). An answer in the affirmative in steps one through four stops the inquiry and the claimant is found to be not disabled. If steps one through four are answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Kring did not engage in substantial gainful activity since July 16, 2020, the application date. (R. 20). At step two, the ALJ determined that Kring had the following severe impairments: seizure disorder, otitis media with bilateral tympanosclerosis, eustachian tube dysfunction, depression, anxiety/panic disorder, dysthymic disorder, attention

3

deficit disorder (ADD), PTSD, premenstrual dysphoric disorder (PMDD), migraines/headaches, hearing loss/tinnitus, and sinusitis. (R. 20).

At step three the ALJ found that Kring did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)". (R. 21). At step four, the ALJ found that Kring had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds, or work around unprotected heights, dangerous moving machinery, or engage in commercial driving. She cannot work in environments with loud noise above level 3 or bright lights beyond a traditional office setting. She can never be exposed to extreme cold, heat, humidity, or wetness. She cannot work in jobs with concentrated exposure to environmental irritants, such as fumes, dusts, gases, or odors, or in poorly ventilated areas. She is limited to simple, routine tasks, performed in a work environment free of fast-paced production requirements, involving occasional, simple, work-related decisions with routine workplace changes. She can have only occasional interaction with the general public, coworkers, and supervisors.

(R. 23).

Also at step four, the ALJ found that Kring has no past relevant work. (R. 27). At step five, the ALJ found that Kring is able to perform jobs that exist in significant numbers in the national economy. (R. 28). Therefore, the ALJ found Kring to be not disabled as defined in the Social Security Act. (R. 29).

### 1. The ALJ's Assessment of Kring's Migraines

Kring asserts that the ALJ failed to properly consider whether her migraines met Listing 11.02. Listing 11.02 is the epilepsy listing, but is used to evaluate migraines. SSR 19-4p. SSR 19-4p states in pertinent part that:

> Primary headache disorder is not a listed impairment in the Listing of Impairments (listings); however, we may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.

4

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

"Under a theory of presumptive liability, a claimant is eligible for benefits if he has a condition that meets or equals an impairment found in the Listing of Impairments." *Kastner v. Astrue*, 697 F.3d 643, 647 (7th Cir. 2012). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnette v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

5

However, an ALJ "is not required to articulate specific evidence" in finding that a claimant's impairments do not equal a Listing. Social Security Ruling (SSR) 17-2p. Rather, an ALJ's "statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation" to support that conclusion. *Id*. Moreover, an ALJ may articulate the judicially reviewable rationale for her step-three medical-equivalence finding later in the five-step process. SSR 17-2p; *Zellweger v. Saul*, 984 F.3d 1251, 1252(7th Cir. 2021). Thus, an ALJ's analysis of a claimant's residual functional capacity "may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." *Id*. at 1255 (quoting *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (quotation marks omitted).

In the present case, the ALJ stated:

> I considered the claimant's medically determinable physical impairments, singly and in combination, under all of the medical listings, including listing(s) 2.10 (hearing loss not treated with cochlear implantation) and 11.02 (epilepsy). Based on the discussion below, the claimant's impairments, considered singly and in combination, do not meet or medically equal the severity requirements of any listed impairment. No treating or examining medical source has recorded objective clinical or diagnostic findings that are the same as or medically equivalent to the criteria of any listed impairment.

(R. 21).

The ALJ then discussed the medical evidence and testimony related to Kring's migraines in multiple places in the Decision. (R. 23, 24, 25, 26). The ALJ then held that Kring's allegations of the impact of her migraines and seizures was inconsistent with the evidence, and noted that her symptoms appear to be largely controlled with medication. (R. 25-26).

In *Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020), the Seventh Circuit held that a step-three challenge cannot succeed unless the plaintiff first establishes that their impairment satisfies the listing at issue:

> First, Sosinski contends that the ALJ improperly decided that his impairments did not meet Listing 1.04A (back disorders) because the ALJ had to "discuss the listing by name and offer more than perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). But even if the ALJ does not offer such an analysis, we do not reverse if the claimant fails to show that he meets the criteria for that listing, as Sosinski did here. *See Maggard v. Apfel*, 167 F.3d 376, 379–80 (7th Cir. 1999); *see also Rice v. Barnhart*, 384 F.3d 363, 369–70 (7th Cir. 2004). We reaffirmed this precise principle in *Jeske*. *See* 955 F.3d at 589–91.

Here, as in *Sosinski*, Kring has failed to show that she meets the criteria for the listing. In fact, as the Commissioner notes, Kring does not even list the criteria in the listing. Nor has Kring mentioned SSR 19-4p which explains how to apply the listing to migraines, or set forth how her migraines meet the criteria in that Ruling. In her reply brief, Kring fails to acknowledge the holding in *Sosinski*, and also fails to set forth any argument as to how she meets the criteria of Listing 11.02. Thus, for all of these reasons, Kring's arguments fail on this issue.

### 2. The ALJ's Assessment of Kring's RFC Limitations

Kring argues that the ALJ erred by not including limitations in the RFC to account for her headache and seizure triggers. At the hearing, Kring testified that her migraines and seizures flare up when she is exposed to various conditions, including fluorescent lighting. (R. 68, 72, 77, 78). She noted that her neurologist advised her to quit her job because she had eight seizures in a week due to the florescent lighting at work. (R. 68). In the Decision, the ALJ held that Kring cannot work in environments with "bright lights beyond a traditional office setting." (R. 23). Kring argues that this limitation is insufficient because many work environments have fluorescent lighting, even though they are not "bright lights". The Commissioner attempts to side-step this argument claiming that "the fact that the ALJ did not provide plaintiff the precise allowance plaintiff wanted – barring all fluorescent light – is simply an unavailing complaint that the ALJ should have weighted that testimony differently." (Response at 10). However, the ALJ failed to mention

7

fluorescent lights anywhere in the Decision and clearly did not weigh Kring's testimony at all on this point. As substantial evidence does not support the ALJ's decision to include a limitation for bright lights, but not a limitation for fluorescent lights, remand is warranted on this issue.

### 3. The ALJ's Assessment of Kring's Mental Impairments

Kring argues that the ALJ cherry-picked the record when reviewing the mental health evidence and failed to acknowledge that Kring's symptoms were described by her providers as "uncontrolled". Kring also claims that the ALJ downplayed the evidence that Kring's mental health symptoms were worsening. The record supports Kring's allegations of panic attacks, crying episodes, depression, and pseudobulbar effect. (R. 524, 548, 549, 551, 553, 612, 732, 764, 915, 919, 922, 926, 1044, 1048, 1049). The Commissioner asserts that the ALJ correctly noted that Kring's mental health symptoms were self-reported, and that Kring sometimes had normal mental status exams. However, as Kring points out, the actual assessment from Kring's provider was that her generalized anxiety disorder was "severe, uncontrolled". (R. 922). Moreover, as there is no objective test for anxiety or panic attacks, a patient must self-report her symptoms. The record here shows consistent reports of mental health issues, which were treated with multiple medications. The fact that Kring was sometimes doing better doesn't necessarily invalidate all of the record evidence where she reported severe symptoms. As the ALJ failed to give due consideration to the bulk of the evidence showing Kring suffered from severe, uncontrolled mental health issues, remand is warranted. *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012) (ALJ may not ignore entire lines of contrary evidence).

### CONCLUSION

For the reasons set forth above, the Defendant's Decision is REVERSED and REMANDED for further consideration as set forth in this Order. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on June 24th, 2024.

                                                   /s/ Cristal C. Brisco
                                                   CRISTAL C. BRISCO, JUDGE
                                                   UNITED STATES DISTRICT COURT